IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 23, 2016 Session at Lincoln Memorial University[1]

## STATE OF TENNESSEE v. ROBERT MERLE COBLENTZ

**Appeal from the Circuit Court for Blount County**
**No. C-21007      David Reed Duggan, Judge**

_____

**No. E2015-01643-CCA-R9-CD – Filed June 10, 2016**

_____

Defendant, Robert Merle Coblentz, was charged with one count of sexual exploitation of a minor. This is an interlocutory appeal filed by the State from the trial court's order granting Defendant's motion to suppress evidence obtained from his computer pursuant to a search warrant. Upon our review of the record and relevant caselaw, we hold that the search warrant authorized the search of Defendant's computer despite the fact that he was not named in the search warrant or affidavit as an occupant of the residence to be searched or as an owner of the items to be seized. We reverse the judgment of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Mike Flynn, District Attorney General; and Clinton Frazier, Assistant District Attorney General, for the appellant, State of Tennessee.

Joe Costner, Maryville, Tennessee, for the appellee, Robert Merle Coblentz.

**OPINION**

---

[1] This case was heard on the campus of Lincoln Memorial University's Duncan School of Law as a special project of the Tennessee Court of Criminal Appeals in furtherance of the educational process of students and faculty.

*Factual and Procedural Background*

The State provided the following procedural history in its motion for interlocutory appeal:

> On January 17 of 2012[,] investigators with Blount County Sheriff's Office, using file sharing software, learned that someone at the IP[2] address of 97.81.56.29 was trafficking images of child sexual abuse. Investigators issued a judicial subpoena to Charter [C]ommunications to find out which of its subscribers was assigned that IP address on that date. Charter Communications responded to the subpoena and told investigators that the subscriber Donna Watson[,] who resided at 3225 Lagrange Drive [in] Maryville . . . had been assigned that IP address on that date. Donna Watson resides at the same address as the [D]efendant. Investigators went to 3225 Lagrange Drive . . . in February 2012 and executed a search warrant for the residence.

(Footnote added). The search warrant directed officers to search for any "[m]aterial and devices aiding in the offense of sexual exploitation of a minor . . . to include the seizure of computers to examine and retrieve such records . . . together with indicia of use, ownership, possession, or control of such records." The search warrant stated that officers had "probable cause to believe that Donna Watson has in his/her possession or under his/her control said property" and that "this property constitutes evidence or tends to demonstrate that Donna Watson participated in the commission of [sexual exploitation of a minor]." Defendant was not named anywhere in the search warrant or underlying affidavit, which was incorporated by reference.

During the course of their search of the residence at 3225 Lagrange Drive, officers discovered a computer in the living room. Ms. Watson disclaimed ownership of the computer and told the officers that it belonged to Defendant. A subsequent search of the contents of the computer led to Defendant being charged by information with one count of sexual exploitation of a minor.

On March 22, 2014, Defendant filed a motion to suppress evidence. At the hearing on the motion, Defendant did not argue that the affidavit failed to state probable cause to support a search warrant for Ms. Watson's residence and various items of personal property. Instead, he claimed that the affidavit and search warrant gave authority to search only those items owned by Ms. Watson and that Ms. Watson

---

[2] "IP" is an abbreviation for "internet protocol," which is "a numerical label assigned to a particular Internet connection used by one or more computers." *United States v. Naylor*, 99 F. Supp. 3d 638, 639 (S.D. W. Va. 2015).

disclaimed ownership of the computer at issue. Defendant insisted that a second warrant was required to search the contents of the computer because it did not belong to Ms. Watson. The State argued that the warrant permitted a search of the residence for any item that could contain evidence of sexual exploitation of a minor and that the law does not require specificity regarding co-residents being named in the affidavit or warrant.

The defense was prepared to present the testimony of Ms. Watson, but the trial court determined that it did not need to hear proof when the State agreed that many of the facts were not in dispute. The parties stipulated that the investigators executed the search warrant at the specified address, that Defendant resided at that address, that Ms. Watson disclaimed ownership of the computer, and that there were no exigent circumstances otherwise permitting a warrantless search. The trial court granted the motion to suppress. The trial court ruled that, pursuant to the United States Supreme Court's decision in *Riley v. California*, __ U.S. __, 134 S. Ct. 2473 (2014), the officers were required to obtain a second warrant before searching the contents of Defendant's computer once they learned that it did not belong to Ms. Watson.

The State filed a timely motion for an interlocutory appeal on December 19, 2014. The trial court granted the State's motion on August 17, 2015. Thereafter, the State filed a timely application for permission to appeal in this Court, which Defendant opposed. This Court granted the State's application on October 1, 2015.

*Analysis*

A defendant seeking to suppress evidence obtained pursuant to a search warrant bears the burden of establishing by a preponderance of the evidence "the existence of a constitutional or statutory defect in the search warrant or the search conducted pursuant to the warrant." *State v. Henning*, 975 S.W.2d 290, 298 (Tenn. 1998). In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is afforded "the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). Ordinarily, questions concerning the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. However, when witness credibility is not an issue, this Court is "as capable as [the] trial court[] of reviewing the evidence and drawing conclusions." *State v. Berios*, 235 S.W.3d 99, 104 (Tenn. 2007) (citing *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). "Where the issue before this Court is the application of law to undisputed facts, then [our] review is de novo." *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (citing *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000)); *see also State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (holding that

review of the trial court's application of the law to the facts is de novo, with no presumption of correctness).

Under both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution, a search warrant must particularly describe the place to be searched and the things to be seized. *See Henning*, 975 S.W.2d at 296 (citing *Marron v. United States*, 275 U.S. 192 (1927)); *State v. McCary*, 119 S.W.3d 226, 247 (Tenn. Crim. App. 2003); *see also* T.C.A. § 40-6-103. A warrant satisfies this particularity requirement if it "points to a definitely ascertainable place so as to exclude all others," *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993), and "enable[s] the searcher to reasonably ascertain and identify the things which are authorized to be seized," *Henning*, 975 S.W.2d at 296 (internal quotation omitted). The question raised by the circumstances of this case appears to be one of first impression before this Court: whether a search warrant that names one person as the occupant of a specified residence authorizes the search and seizure of a technological gadget belonging to another, unnamed occupant sharing the same IP connection.

This Court has held that the name of the owner of a particular piece of property may be included in the search warrant as a means of identifying the premises. *See State v. Bostic*, 898 S.W.2d 242, 246 (Tenn. Crim. App. 1994). However, a search of a particular location pursuant to a warrant that either does not name the occupant or names the wrong individual as the occupant will be upheld so long as the warrant otherwise accurately describes the property to be searched. *Garner v. State*, 423 S.W.2d 480, 482 (Tenn. 1968) ("[T]he search could not be declared unlawful or in violation of the constitutional rights of the owner, either because of the absence of his name in the warrant or because of an affirmative error in stating his name." (quoting *Seals v. State*, 11 S.W.2d 879, 881 (Tenn. 1928))); *Collins v. State*, 199 S.W.2d 96, 97 (Tenn. 1947) ("[T]he validity of the warrant was not destroyed by the inclusion of the name of another, not in fact an occupant, along with that of the true occupant."); *State v. Steve Johnson*, No. 80, 1986 WL 3103, at *2 (Tenn. Crim. App. Mar. 11, 1986) ("[T]he fact that the wrong occupier is named in the warrant does not make the warrant invalid as long as the correct house was searched by following accurate instructions." (citing *State v. McColgan*, 631 S.W.2d 151, 154 (Tenn. Crim. App. 1981))), *perm. app. denied* (Tenn. June 23, 1986). As the United States Supreme Court has explained, "[s]earch warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978). "A search warrant for the entire premises of a single family residence is valid, notwithstanding the fact that it was issued based on information regarding the alleged

illegal activities of one of several occupants of a residence." *United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991).[3]

Defendant has not contended that the search warrant's description of the property located at 3225 Lagrange Drive is in any way inaccurate or misleading. Furthermore, at the suppression hearing, Defendant did not dispute the State's characterization of the property as a single-family residence. Though it is not clear from the record the exact relationship between Defendant and Ms. Watson, other jurisdictions have held that the fact that a defendant has a roommate or rents a room in a single-family residence "does not convert his single-family home into an apartment house or multi-unit building" and that a search warrant for that residence permits a search of the entire premises. *Durham v. McElynn*, 254 F. App'x 892, 896 (3d Cir. 2007); *see also United States v. McLellan*, 792 F.3d 200, 212 (1st Cir. 2015). Because the name of the occupant of a premises is not a constitutional requirement of a warrant to search a particular location, the absence of Defendant's name as an occupant of the premises in either the affidavit or the search warrant is not fatal to the search in this case. The search warrant, based on adequate probable cause, authorized the search of the entire premises located at 3225 Lagrange Drive in Maryville, Tennessee.

As to specific items discovered during the course of a search, the general rule is that "if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984) (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)); *see also United States v. Gray*, 814 F.2d 49, 51 (1st Cir. 1987). Courts have drawn a distinction between items belonging to occupants of the premises and those belonging to visitors. *E.g.*, *State v. Thomas*, 818 S.W.2d 350, 358-59 (Tenn. Crim. App. 1991); *see generally State v. Andrews*, 549 N.W.2d 210, 213-18 (Wis. 1996) (discussing cases from various jurisdictions and comparing the different approaches taken).[4] An

---

[3] On the other hand, a search warrant directed against a multiple-unit dwelling, such as an apartment or a hotel, must describe "the subunit intended to be searched with sufficient definiteness to exclude the search of an unintended subunit." *State v. Stinnett*, 629 S.W.2d 1, 3 (Tenn. 1982).

[4] The United States Supreme Court has noted that there is "a distinction between [a] search of the person and [a] search of property." *Wyoming v. Houghton*, 526 U.S. 295, 303 n.1 (1999) (citing *United States v. Di Re,* 332 U.S. 581 (1948)). A search warrant for a particular place does not authorize the search of people who happen to be at that place but about whom the police have no probable cause to believe are involved in any illegal activity. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *State v. Curtis*, 964 S.W.2d 604, 612 (Tenn. Crim. App. 1997) (stating that "an officer does not, as a general rule, have the right to search a transient visitor [to the premises being searched]"). This rule has often been extended to those personal items which function as "extensions of the person," such as purses, shoulder bags, and briefcases, belonging to visitors to the premises being searched. *Andrews*, 549 N.W.2d at 215-16; *Thomas*, 818 S.W.2d at 358.

owner or occupant of a premises holds a "special relationship to the place" that distinguishes him or her from a "mere visitor or passerby who suddenly found his belongings vulnerable to a search of the premises." *United States v. Micheli*, 487 F.2d 429, 432 (1st Cir. 1973). In other words, "an occupant of a residence . . . has no additional privacy interest in his or her belongings situated there," whereas "the 'mere visitor' in that residence . . . retains an expectation of privacy in personal belongings." *United States v. Neet*, 504 F. Supp. 1220, 1227 (D. Colo. 1981) (citing *Micheli*, 487 F.2d at 432).

This Court has previously held that officers executing a search warrant may assume that "all personal property belongs to the resident of the premises" and is subject to search unless the officers have reason to know that the item belongs to a visitor. *Thomas*, 818 S.W.2d at 359 (citing *People v. McCabe*, 144 Cal. App. 3d 827, 830 (1983)).[5] Furthermore, several jurisdictions add the caveat that the police have no duty to inquire into the ownership of items found on the premises subject to the search warrant, noting that "[i]t would not be reasonable to require police officers executing a warrant to ask individuals located on the premises whether they own various items of personal property, nor would it be reasonable to expect an appropriate response were they required to do so." *State v. Wills*, 524 N.W.2d 507, 511 (Minn. Ct. App. 1994) (quoting *Commonwealth v. Reese*, 549 A.2d 909, 911 (Pa. 1988)); *see also State v. Nabarro*, 525 P.2d 573, 576-77 (Haw. 1974) (cited approvingly by *Thomas*, 818 S.W.2d at 360). We conclude that the general rule is that a search warrant for a given location authorizes the search of items belonging to an owner or occupant of the premises, even if that person is not named in the warrant. *See United States v. McLaughlin*, 851 F.2d 283, 287 (9th Cir. 1988); *Micheli*, 487 F.2d at 432; *United States v. Teller*, 397 F.2d 494, 497 (7th Cir. 1968); *Wills*, 524 N.W.2d at 511; *People v. Berry*, 224 Cal. App. 3d 162, 169 (1990).

Furthermore, when the probable cause supporting the issuance of a search warrant is based upon images of child pornography that trace back to a particular IP address, it is important to note that:

> [a]n IP address is . . . specific to a computer network [and] serve[s] to identify and locate that network on the Internet, but not to further identify the defendant. In fact, a single IP address may host one or more devices operated or owned by multiple users (for example, a computer or handheld tablet), each communicating on the same network, such as with a wireless router or a business intranet.

---

[5] The *Thomas* court noted that police are allowed to search personal items they know belong to a visitor "if someone within the premises has had the opportunity to conceal the contraband within the personal effects of the visitor immediately prior to the execution of the search warrant." 818 S.W.2d at 359 (internal quotation omitted).

*Patrick Collins, Inc. v. Doe*, 288 F.R.D. 233, 235 (E.D.N.Y. 2012) (internal quotation and citation omitted). A search warrant for a residential address associated with a suspect IP address allows for the search of the entire residence for computers and electronic devices that may be accessing the internet at that location. *See United States v. Renigar*, 613 F.3d 990, 994 (10th Cir. 2010) (holding that "information in the affidavit which linked the IP address in question to both child pornography and to the residential address" created sufficient probable cause to believe that "the computer which [the suspect] used to access the [internet] would be found at the apartment and would contain evidence associated with child pornography and/or its transmission"). This is true even for computers belonging to occupants of the residence who are not specifically named in the warrant. *See McLellan*, 792 F.3d at 212 (upholding search of computer belonging to a defendant who rented a room in a single-family residence but was not named in the search warrant); *United States v. Latham*, No. 2:06-cr-379-LDG, 2007 WL 4563459, at *3-4 (D. Nev. Dec. 18, 2007) (upholding search of a laptop belonging to defendant who was not named in search warrant for brother's residence wherein defendant was also an occupant), *aff'd*, 379 F. App'x 570 (9th Cir. 2010).

In this case, the parties stipulated that Defendant was indeed an occupant of the premises rather than a visitor. Therefore, his belongings were subject to be searched under the authority of a warrant directed at the entire residence. Ownership of a given item found during the course of a search is only relevant if the owner of that item is a visitor not named in the warrant and about whom the police have no probable cause to believe is involved in illegal activity. At the suppression hearing, defense counsel argued that a qualifying phrase suggesting the possible presence of unknown occupants would be necessary to authorize the search of an unnamed occupant's belongings. *See McLellan*, 792 F.3d at 206 (noting that the search warrant indicated there was probable cause to believe that evidence of child pornography would be discovered at the address associated with the internet account and in the possession of "Darryl J. St. Yves and/or other residents, as yet unknown"). However, as we discussed above, a search warrant need not name *any* occupant of the premises to pass constitutional muster. *See Garner*, 423 S.W.2d at 482; *Seals*, 11 S.W.2d at 881. Therefore, the search of Defendant's computer, which shared Ms. Watson's internet service and was connected to the same IP address, was authorized by the search warrant particularly describing the place to be searched and the things to be seized, including computers.

The trial court in this case based its decision primarily on the United States Supreme Court's decision in *Riley v. California*. In that case, the Supreme Court held that a warrantless search of data stored on a defendant's cell phone was not justified as a search incident to a lawful arrest. 134 S. Ct. at 2492. The Court held that officers are permitted to seize and secure a cell phone to prevent the destruction of evidence but that they are required to obtain a warrant before searching the contents of the phone. *Id*. at 2486, 2493. This case is easily distinguishable from *Riley*. Though both cases involve

the search of similar items—modern cell phones essentially functioning as miniature computers—the search in *Riley* was a warrantless search incident to arrest whereas the search in this case was authorized by a warrant. At the time of the search, the officers were in possession of a warrant that specifically provided for "the seizure of computers to examine and retrieve" evidence of sexual exploitation of a minor. The warrant specifically contemplated not only the seizure of the computer, but also the search of its contents. *See United States v. Peake*, 804 F.3d 81, 89 (1st Cir. 2015) (holding that the search of the defendant's personal electronic devices found on the premises was within the scope of a search warrant specifying the seizure of electronically-stored documents); *cf. Wills*, 524 N.W.2d at 509 (holding that police were not required to obtain a second warrant to search the contents of a safe belonging to an unnamed occupant "which reasonably could have contained the items listed in the search warrant and supporting documents"). The officers acted within the scope of the search warrant when they searched the contents of Defendant's computer and were not required to obtain a second warrant.

Because we have determined that the search warrant in this case authorized the search of Defendant's computer, we need not address the State's arguments that the evidence obtained would be admissible pursuant to either the inevitable discovery or good faith exceptions to the exclusionary rule.

*Conclusion*

Based on the foregoing, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

_____
TIMOTHY L. EASTER, JUDGE